# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **BRANDON M. LEWIS,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:18-cv-00110-TES** |
| **J. MICHAEL STEWART** *et al.,* | |
| *Defendants.* | |

## ORDER

Before the Court are two Motions to Dismiss filed by two separate groups of defendants. The first group, comprised of Defendants Ben Allen, Gregory Mauldin, and J. Michael Stewart ("state Defendants"), filed a Motion to Dismiss for Failure to State a Claim [Doc. 26] as it relates to Plaintiff's state law claims on sovereign immunity grounds. In the same motion, the state Defendants also asked the Court to stay Plaintiff's federal claims while the criminal charges against him are pending. [Doc. 26, at 3]. The second group, comprised of Defendants Nekeyra Rumph and Sodexo, Inc. ("Sodexo Defendants") filed a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim [Doc. 27]. For the reasons stated below, the Court **GRANTS in part** and **DENIES in part** the state Defendant's Motion [Doc. 26]. Furthermore, the Court **GRANTS** the Sodexo Defendants' Rule 12(b)(6) Motion [Doc. 27].

## MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the allegations in a plaintiff's complaint. *Acosta v. Campbell*, 309 F. App'x 315, 317 (11th Cir. 2009). A plaintiff's claims will survive a motion to dismiss if the complaint pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action" or "conclusory statements." *Iqbal*, 556 U.S. at 678. Thus, when the Court considers a motion to dismiss

> we use a two-step framework. First, we identify the allegations that are 'no more than conclusions.' Conclusory allegations are not entitled to the assumption of truth. Second, after disregarding conclusory allegations, we assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'

*McCullough v. Finley*, No. 17-11554, 2018 WL 5318146, at *5 (11th Cir. Oct. 29, 2018) (internal citations omitted). The Court recounts the facts of this case below in light of this standard. Dismissal is also appropriate if "it is apparent from the face of the complaint that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## BACKGROUND

In February 2016, Plaintiff Brandon M. Lewis was a student at Middle Georgia State University ("MGSU") where he was enrolled in a chemistry class with an impending final exam. [Doc. 23, at ¶¶ 11, 12 & 16]. At the time, Plaintiff had a meal plan

that allowed him to eat at the on-campus dining hall managed by Defendant Sodexo, Inc., who was responsible for staffing the dining hall. [*Id.* at ¶¶ 12 & 18-19]. On the day of the incident, Plaintiff was waiting in line at the dining hall when he struck up a conversation with Defendant Nekeyra Rumph, a dining hall employee who he saw on a regular basis. [*Id.* at ¶ 17]. During this conversation, Defendant Rumph asked Plaintiff how he was doing to which Plaintiff responded that he was tired. [*Id.* at ¶ 21]. Defendant Rumph asked Plaintiff why he was tired and he stated "either that they were, or it felt like they were making bombs all day" in his chemistry class. [*Id.* at ¶ 20]. Defendant Rumph and Plaintiff then parted ways without any indication that Defendant Rumph felt threatened by Plaintiff's reference to bombs. [Doc. 23 at ¶ 23]. Unbeknownst to Plaintiff, Defendant Rumph, pursuant to a policy established by Defendant Sodexo, reported Plaintiff's "bomb threat" to the campus police. [*Id.*].

Shortly thereafter, as Plaintiff ate his food, several officers from the Middle Georgia Campus Police Department, including Defendants Mauldin and Allen, approached him, handcuffed him, and began asking him questions about his conversation with Defendant Rumph. [*Id.* at ¶¶ 25-27]. Plaintiff maintains that he remained calm throughout this encounter and allowed the Officers to search his person and his belongings. [*Id.*, at ¶¶ 27 & 29]. At some point during this encounter, the Officers moved Plaintiff to the back of a police car and, with Plaintiff's consent, proceeded to search his car, dorm room, and school-issued locker with the assistance of bomb-sniffing

dogs, but found no evidence of bombs or bomb-making activity. [*Id.* at ¶¶ 29-32]. Nevertheless, Defendants Mauldin and Allen contacted Defendant Stewart, MGSU's Director of Student Conduct, who informed them that MGSU "wanted to pursue criminal charges of Terroristic Threats against [Plaintiff] and directed them to move forward with the arrest and prosecution." [*Id.* at ¶ 34]. Accordingly, Defendants Mauldin and Allen charged Plaintiff with making terroristic threats, transported him to the Bleckley County Law Enforcement Center, and booked and jailed him on this charge. [Doc. 23 at ¶ 35]. Plaintiff was released from custody the following day, but maintains that the terroristic threats charge is still pending against him. [*Id.* at ¶ 36].

Plaintiff originally filed this action in the Superior Court of Bleckley County, Georgia, asserting claims under state law for false imprisonment against Defendants Stewart, Mauldin, Allen, Rumph, and Sodexo (based on respondeat superior) and for negligent training[1] against Sodexo. [Doc. 1, at ¶ 1; Doc. 23, at ¶¶ 46, 59, 75, 78 & 81]. Plaintiff also asserted federal law claims under 42 U.S.C. § 1983 against Defendants Mauldin and Allen for arresting Plaintiff without probable cause and against Defendant Stewart for directing Plaintiff's arrest without probable cause, in violation of his constitutional rights. [Doc. 23, at ¶¶ 51 & 64]. The Court received this case when the State

---

[1] Plaintiff labels this claim in different ways throughout his submissions. For example, Plaintiff refers to this claim as a claim for "negligent training" in his Amended and Recast Complaint but as "Negligent Training, Policies, and Customs" in his response to the Sodexo Defendants motion to dismiss. [Doc. 33, at 6]. For purposes of this order, the Court will refer to the claim as described in Plaintiff's Amended and Recast Complaint [Doc. 23].

Defendants, with the consent of the Sodexo Defendants, filed a Notice of Removal [Doc. 1] pursuant to 28 U.S.C. § 1441(a) based on federal question jurisdiction. [Doc. 1, at ¶ 4].

## DISCUSSION

## I. State Defendants' Motion to Dismiss [Doc. 26]

In their motion, the State Defendants argue that the Court should dismiss Plaintiff's state-law claims against the State Defendants and stay Plaintiff's federal claims based on the *Younger* abstention doctrine. As discussed below, the Court agrees that Plaintiff's state-law claims should be dismissed, but finds that *Younger* abstention is inappropriate in this case.

### 1. State-Law Claims

The State Defendants seek dismissal of Plaintiff's state-law claims against them on the basis that his claims are barred by sovereign immunity under the Georgia Tort Claims Act ("GTCA") Ga. Code Ann. § 50-21-20 *et seq*. [Doc. 26-1, at 5-7]. The State Defendants also argue that Plaintiff failed to comply with the GTCA's ante litem notice and service of process requirements as well as the GTCA's statute of limitations. [Doc. 26-1, at 7-10]. In his response, Plaintiff "concedes that state law claims for torts committed by state officials are, in effect, claims against the state itself and that the state [] would be entitled to all statutory notice provisions and requirements pertaining thereto." [Doc. 30, at 4]. Plaintiff does not address the State Defendants' sovereign immunity arguments or his assertion that the state-law claims are time-barred as to the State Defendants. In any case,

Plaintiff's concession that he was required to (but did not) properly effectuate service or provide the required ante litem notice is sufficient for the Court to dismiss Plaintiff's state-law claims. *See Cummings v. Ga. Dep't of Juvenile Justice*, 653 S.E.2d 729, 731-32 (Ga. 2007) (holding that plaintiffs are required to strictly comply with GTCA requirements and dismissal is appropriate if plaintiff fails to comply). *See also Bradley v. Hale*, No. 5:06CV310 (WDO), 2006 WL 3709160, at *1 (M.D. Ga. Dec. 14, 2006) (dismissing state-law tort claims for failure to comply with GTCA ante litem notice); *White v. Ga. Dep't of Tech. & Adult Educ.*, Civil Action No. 1:08-cv-3503-GET, 2009 WL 10671031, at *2 (N.D. Ga. June 4, 2009) (same). Accordingly, the Court grants this part of the State Defendants' Motion to Dismiss [Doc. 26].

## 2. Younger Abstention

The State Defendants' also argue that the Court should stay the balance of Plaintiff's claims based on the *Younger* abstention doctrine. The Court finds that *Younger* abstention is not appropriate in this case because the state has not taken any steps to initiate criminal proceedings against Plaintiff. Under the *Younger* abstention doctrine, "federal courts should abstain from interfering with *ongoing* state criminal prosecutions" by allowing the state proceedings to conclude before hearing a plaintiff's federal claims. *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1316 n.9 (11th Cir. 2005) (emphasis added). Although the parties agree that charges against Plaintiff are "pending," the state has not taken any steps to prosecute Plaintiff in the more than two-

and-a-half years since the arrest and the State Defendants provided no evidence that the state is actually preparing to prosecute Plaintiff. Accordingly, the Court concludes that there are no "ongoing" state proceedings against Plaintiff that would justify abstention. *See Steffel v. Thompson*, 415 U.S. 452 (1974) (holding that *Younger* abstention did not apply where prosecution was threatened but not pending); *Ealy v. Littlejohn*, 569 F.2d 219, 232 (5th Cir. 1978) ("[W]hen there will be no interruption of ongoing state criminal proceedings, and thus no threat to proper federal-state relations, *Younger* does not bar federal intervention."); *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 817 ("The possibility that a state proceeding may lead to a future prosecution of the federal plaintiff is not enough to trigger *Younger* abstention.").

Undeterred by the lack of prosecutorial action, the State Defendants maintain that *Younger* ought to "apply not only to pending criminal cases but also to prosecutions that are about-to-be-pending." [Doc. 26-1, at 11] (citing *Morales v. Trans World Airlines*, 504 U.S. 374, 381-82 n.1 (1992). Yet the State Defendants offer no evidence that a prosecution is "about-to-be-pending" against Plaintiff and the cases the State Defendants cite in which courts applied *Younger* in the absence of formal charges are distinguishable.

First, Plaintiff cites *Kaylor v. Fields* for the proposition that issuance of a subpoena is a sufficient step towards prosecution to satisfy the "about to be pending" standard. 661 F.2d 1177, 1182 (8th Cir. 1982). However, *Kaylor* was decided on a point of state-specific law that allowed the party impacted by the subpoena to present their claims immediately

in state court as part of a motion to quash. 661 F.2d at 1182. Indeed, the court in *Kaylor* went on to conclude that abstention would be inappropriate if there was no "immediate recourse in the state courts." *Id.* (citing *Brennick v. Hynes*, 471 F. Supp. 863, 867 (N.D.N.Y. 1979)). This caveat precisely describes this case as there is, at this time, no state court proceeding in which Plaintiff has "immediate recourse" to press his claims.

The Court is likewise unpersuaded by *Texas Ass'n of Business v. Earle*, in which the plaintiffs sought, among other things, "an injunction against the enforcement of subpoenas issued by the grand jury[] [and] an order enjoining the entire grand jury investigation." 388 F.3d 515, 516 (5th Cir. 2004). The court declined to grant the plaintiff's requested injunctive relief, however, after concluding that abstention was warranted because the state grand jury proceedings constituted "ongoing state proceedings" for purposes of *Younger* abstention. *Earle*, 388 F.3d at 520-21. But, unlike in *Earle*, the state in this case has not taken any steps that indicate its intent to prosecute Plaintiff. And, as the court in *Earle* noted, "grand jury proceedings bear a very close relationship with criminal trial proceedings" so the initiation of grand jury proceedings in that case provided strong evidence that charges against the plaintiff were "about-to-be-pending." 388 F.3d at 521. Moreover, as in *Kaylor*, the court in *Earle* emphasized the essentiality of an existing proceeding in which the plaintiffs in that case could seek relief. *Id.* ("The third prong of the test for *Younger* applicability is whether the state proceeding affords an adequate opportunity to raise constitutional challenges. We find that it does.") (internal citation

omitted). As noted above, the State Defendants offered no evidence that a grand jury is currently considering Plaintiff's case or that the state is contemplating bringing charges so that Plaintiff could assert his claims.

The final case the State Defendants cite is *Kingston v. Utah County*, in which the plaintiff, who apparently knew that criminal charges were imminent, "requested a temporary restraining order from the district court to prevent the defendants from filing those criminal charges." No. 97-4000, 1998 WL 614462, at *4 (10th Cir. 1998). Rather than granting the temporary restraining order, "the district court requested (or ordered, depending on the version of the events) that the defendants hold off on filing charges until it could hold a hearing and decide whether an injunction would be appropriate." *Id.* The state initiated criminal charges three days after the district court's decision. *Id.* On appeal, the Tenth Circuit held that the district court should have applied *Younger* because the facts were "sufficient to establish the existence of a pending state criminal proceeding." *Id.* The court reasoned that abstention was appropriate because the criminal charges "would have been filed absent the district court's intercession" and the plaintiff would have an immediate opportunity to challenge the validity of the proceedings in state court—factors clearly not present in this case. *Id.* Moreover, the *Kingston* decision appears to be a basic application of the rule announced in *Hicks v. Miranda* that *Younger* abstention was appropriate where criminal proceedings were initiated "before any proceedings of substance on the merits have taken place in the federal court" because the

state initiated criminal charges soon after the federal proceedings began. *Kingston*, 1998 WL 614462, at *4; *Hicks v. Miranda*, 422 U.S. 332, 349 (1975).

The Court notes an additional basis for distinguishing the above cases to which *Kingston* alluded, namely that the injunction sought in *Kaylor*, *Earle*, and *Kingston* implicated *Younger*'s comity concerns to a greater degree than Plaintiff's request for damages. Indeed, the *Kingston* court emphasized that its decision was based in part on its belief that

> [p]ermitting the targets of state criminal investigations to challenge subpoenas or search warrants in federal court prior to their indictment or arrest . . . would do as much damage to principles of equity, comity, and federalism as allowing federal courts to suppress the fruits of subpoenas or search warrants in ongoing state criminal trials.

1998 WL 614462, at *4 (quoting *Nick v. Abrams*, 717 F. Supp. 1053, 1056 (S.D.N.Y. 1989)). This makes sense as the issuance of subpoenas, search warrants, and initiating grand jury proceedings is clear evidence that the state is exercising its prerogative as a separate sovereign to prosecute criminal activity in its borders. But, where the state has not taken such steps, there is little risk of running afoul of the principle of comity that underlies *Younger*.

In addition to arguing that the present case satisfied the "about-to-be-pending" standard, the State Defendants argued that the Court should stay Plaintiff's claims based on *Wallace v. Kato* which directed district courts to stay false arrest claims "until the criminal case or likelihood of a criminal case is ended." [Doc. 36, at 2]; 549 U.S. 384, 393-

94 (2007). In essence, the State Defendants argue that Plaintiff's arrest two-and-a-half years ago means there is a "likelihood of a criminal case." The Court disagrees. Under the State Defendants' interpretation of *Wallace*, a false arrest claim could only be brought if the criminal case has actually concluded or the statute of limitations to bring criminal charges has run, thereby precluding any chance of criminal prosecution. The problem with this interpretation is that not all crimes in Georgia have a statute of limitations. *See, e.g.*, Ga. Code Ann. § 17-3-1(a) (no statute of limitations for murder); Ga. Code Ann. § 17-3-1(d) (no statute of limitations for armed robbery, kidnapping, and various sexual crimes if DNA evidence establishes identity of accused). Thus, under the State Defendant's interpretation of *Wallace*, an individual booked for murder, but never prosecuted, would never be able to bring a false arrest claim. Taking this concern a step further, a state could eliminate all statutes of limitations for crimes and eliminate entirely the risk of liability for unconstitutional false arrests.

Moreover, nothing in *Wallace* suggests that it was intended to be read as expansively as the State Defendants argue. First, the case was not about abstention doctrines but rather statutes of limitations. The Court's discussion of abstention was confined to a single paragraph and was in response to an argument raised by one of the parties. *Wallace*, 549 U.S. at 393-94. Second, *Wallace* did not involve a plaintiff that had merely been arrested without subsequent prosecution; rather, the state was actively pursuing criminal charges against the plaintiff in that case. *Id.* at 386. In fact, the State

Defendants do not provide a single case in which *Wallace* was applied to bar a false arrest claim where the state's only prosecutorial action was an arrest. In view of these concerns, the Court declines to accept the State Defendants' interpretation of *Wallace*'s "likelihood of a criminal case" to mean an arrest without any evidence of subsequent prosecution.

For the reasons outlined above, the Court grants the State Defendants request to dismiss Plaintiff's state-law claims against them. Thus, the only remaining claims against the State Defendants are Plaintiff's § 1983 claims. However, the Court denies the State Defendants' request to stay these claims.

## II.  Sodexo Defendants' Motion to Dismiss [Doc. 27]

### 1.  Claims Against Defendant Rumph

Plaintiff asserts a single claim against Defendant Rumph for false imprisonment. The Sodexo Defendants argue that Plaintiff's false imprisonment claim against Defendant Rumph should be dismissed because Plaintiff does not allege that she actually participated in Plaintiff's detention or that she "engage[d] in any conspiracy with Officers Mauldin and Allen or any other individual at MGSU requesting his detention or arrest." [Doc. 27-1, at 6]. Plaintiff argues, however, that Defendant Rumph may be liable because, under Georgia law, an individual can be liable for false imprisonment if they urge the detention of another or provide false or incomplete information that leads to a detention. [Doc. 33, at 4]. In short, Plaintiff maintains that the substance of Defendant Rumph's

report to the police will determine her liability and that discovery is necessary to ascertain whether she urged them to detain Plaintiff. [*Id.*].

To that end, the Court finds that even if discovery could reveal evidence that Defendant Rumph urged the Officers to arrest Plaintiff, Plaintiff's Recast Complaint [Doc. 23] fails to allege the basic elements of his false imprisonment claim against Defendant Rumph. For example, in *Adams v. Carlisle*, the Georgia Court of Appeals reviewed a trial court's grant of summary judgment in favor of the defendants on the plaintiff's false arrest claims. 630 S.E.2d 529, 532 (Ga. Ct. App. 2006). The court held that summary judgment as to one of the defendants was appropriate because the plaintiff "present[ed] no evidence that [the defendant] did or said anything to directly or indirectly urge the officers to prosecute the [plaintiff]." *Adams*, 630 S.E.2d at 536. Although *Adams* involved a motion for summary judgment rather than a motion to dismiss, it demonstrates that Georgia law treats urging by a defendant as an element of a false imprisonment claim when the defendant did not actually detain the plaintiff. *See also Examination Mgmt. Servs. v. Sneed*, 794 S.E.2d 678, 683 (Ga. Ct. App. 2016) (affirming grant of summary judgment where Plaintiff did not offer evidence that Defendant urged officers to arrest Plaintiff).

Accordingly, for Plaintiff's claim against Defendant Rumph to survive the instant motion, he must have alleged that she urged the police to detain him or that she knowingly communicated false or incomplete information leading to his arrest. He did not do this. Instead, Plaintiff alleged that Defendant Rumph reported a bomb threat to

the police—a clearly deficient allegation because a person is not liable for false imprisonment for "merely relaying facts to an official." *See Welton v. Ga. Power Co.*, 375 S.E.2d 108, 111 (Ga. Ct. App. 1988). *See also* [Doc. 23, at ¶ 24] ("Defendant Rumph called 911 to report a bomb threat."). In light of this deficiency, Plaintiff's claim against Defendant Rumph is properly dismissed for failure to state a claim.

## 2. Claims Against Defendant Sodexo

Finally, the Court finds that Plaintiff's claims against Defendant Sodexo should be dismissed. Plaintiff argues that Defendant Sodexo is liable for Defendant Rumph's tortious conduct based on the theory of respondeat superior and is liable for its own negligence in implementing a workplace policy that led to Plaintiff's arrest.

With respect to Plaintiff's false imprisonment claim based on respondeat superior, the Court finds that the claim against Defendant Sodexo fails as a matter of law. "Under the doctrine of respondeat superior, an employer's liability is purely derivative of its employee's liability"; thus, where the claim against the employee fails, so must the claim against the employer. *Am. Material Servs., Inc. v. Giddens*, 675 S.E.2d 540, 543 (Ga. Ct. App. 2009).

Accordingly, the sole remaining claim against Defendant Sodexo is for its alleged negligent training of Defendant Rumph. Although Plaintiff identifies this claim as one for negligent training, his arguments are directed at establishing both a negligent training claim and a claim that Defendant Sodexo's bomb-threat policy was itself negligent. After

all, Plaintiff concedes not only that Defendant Sodexo trained its employees to report bomb threats but also that "Defendant Rumph was acting pursuant to Sodexo, Inc.'s policies and procedures" when she reported the threat. [Doc. 23, at ¶ 82]. These allegations suggest that Plaintiff's gripe is not with the adequacy of Defendant Sodexo's training but rather with the bomb-threat policy itself. At the same time, however, Plaintiff only alleges that Defendant Sodexo had a duty to adequately train its employees. [*Id.* at 80]. The lack of clarity in Plaintiff's Amended Complaint [Doc. 23] on this point provides an independent basis for dismissal. *See Peavey v. Black*, 476 F. App'x 697, 699 (11th Cir. 2012) (holding that dismissal is appropriate when substance of claims is unclear). Nevertheless, the Court will review the sufficiency of Plaintiff's Amended Complaint [Doc. 23] as though he was asserting claims for negligent training and negligence in adopting the bomb-threat policy.

To state a claim for negligence under Georgia law, the defendant must allege "(1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a causal connection between the conduct and the injury; and (4) damages from the breach of duty." *Underwood v. Select Tire, Inc.*, 676 S.E.2d 262, 267 (Ga. Ct. App. 2009) (quoting *Lee Street Auto Sales v. Warren*, 116 S.E.2d 243, 244 (Ga. Ct. App. 1960)).

### A. Negligent training claim

The Court begins with Plaintiff's negligent training claim. Plaintiff argues that Defendant Sodexo "owed a duty to the public in general and to [Plaintiff] in particular, to adequately train its employees." [Doc. 23, at ¶ 80]. The Court agrees with Plaintiff that an employer has a duty of ordinary care to adequately train its employees. *See La Petite Acad., Inc. v. Turner*, 543 S.E.2d 393, 396 (Ga. Ct. App. 2000).[2] However, Plaintiff does not allege how Defendant Sodexo's training was deficient. In other words, although the Court agrees that Defendant Sodexo had a duty to adequately train its employees, Plaintiff does not allege that Defendant Sodexo actually breached their duty to *him*. As noted above, Plaintiff concedes that Defendant Rumph acted in accordance with Defendant Sodexo's policy when she reported the threat to authorities. Finally, perhaps most damaging, Plaintiff's negligent training claim fails because he does not allege any causal connection between the adequacy of Defendant Sodexo's training of Rumph and his arrest. Although Plaintiff does argue that the policy may have been a motivating factor in the decision to arrest Plaintiff, this causal theory is better suited for a claim that the bomb-threat policy was negligent.[3] *See* [Doc. 33, at 7]. In short, Plaintiff simply has

---

[2] *See also* Charles R. Adams III, <u>Georgia Law of Torts</u> § 7:6 (2017) ("An employer may be liable for failure to adequately train an employee, but the failure to provide adequate training must be causally related to the plaintiff's injuries.").

[3] The Court also notes that its extensive discussion below of the arresting officers as intervening actors in this case would also apply to break the causal chain in a negligent training claim.

not laid out sufficient facts to plausibly show that Defendant Sodexo did anything wrong in training Defendant Rumph that led to his harm.

### B. Negligent Policy

Having concluded that Plaintiff's allegations are insufficient to state a claim for negligent training, the Court now considers Plaintiff's claim as though it is properly understood as a claim that Defendant Sodexo's bomb-threat policy was negligent.

With respect to the existence of a legal duty, Plaintiff only alleges that Defendant Sodexo had a duty to "adequately train its employees." [Doc. 23, at ¶80]. Generously construed, this may be understood as an allegation that Defendant Sodexo had a duty to implement or refrain from implementing policies that could foreseeably cause harm. This interpretation of Plaintiff's allegations is consistent with the arguments Plaintiff makes in support of the existence of a legal duty in his Brief in Opposition to Defendant's Motion to Dismiss [Doc. 33, at 6]. Specifically, Plaintiff argues that, although Defendant Sodexo "has no affirmative duty to perform by law, where one undertakes to do an act which they otherwise have no duty to perform, he, she[,] or it may be liable for the injuries incurred thereby." [Doc. 33, at 6]. Although Plaintiff does not fully explain this argument, the Court understands it to mean that because Defendant Sodexo implemented a bomb-threat policy, it was required to implement that policy with ordinary care. Plaintiff also argues that "[a]n employer, who by its own negligent . . . policies, causes a person or class of people to be wrongfully arrested in violation of their constitutional rights can and

should be held at fault if that arrest was occasioned by said policy." [*Id.*] (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

At the outset, the Court finds that *Monell* has no applicability whatsoever to the question before the Court. *Monell* was a § 1983 action based on discriminatory workplace policies in a local government. 436 U.S. at 658. It did not involve negligence or a private employer and it did not purport to create a duty in employers to implement or refrain from implementing certain policies. Instead, the Court is persuaded that *Ferrell v. Mikula* precludes it from finding that Defendant Sodexo had a duty to implement a policy requiring its employees to investigate and assess bomb threats prior to reporting them. 672 S.E.2d 7 (Ga. Ct. App. 2008).

In *Ferrell*, an employee of the defendant restaurant informed an off-duty police officer that he believed the plaintiffs "dined and dashed." *Id.* at 10. The off-duty officer followed and ultimately detained the plaintiffs, only to learn that he arrested the wrong people. *Id.* The trial court granted summary judgment on the plaintiffs' negligent training claim and the Court of Appeals affirmed. *Id.* at 13-14. In so holding, the Court of Appeals noted that the plaintiffs cited no authority that would support a negligent training claim on the alleged facts. *Id.* Given the similarity of the *Ferrell* facts to this case, the Court concludes that Georgia courts would again reject the existence of a legal duty in this case.

Plaintiff's negligent-policy claim also lacks merit because Defendant Sodexo's bomb-threat policy was reasonable as a matter of Georgia law. As explained above, a

person cannot be liable for "merely relaying facts to an officer" and this was all Defendant Sodexo's policy required its employees, like Defendant Rumph, to do. *Welton*, 375 S.E.2d 108, 111. Although this rule was originally applied in the context of false arrest claims, the Georgia Court of Appeals extended it to bar negligence claims against persons who make statements "in good faith to police officers or others investigating criminal activity." *Baggett v. Nat'l Bank & Tr. Co.*, 330 S.E.2d 108, 110 (Ga. Ct. App. 1985). Because Plaintiff does not allege that Defendant Sodexo did anything more than implement a policy requiring Defendant Rumph to make good faith statements to police regarding possible threats, the Court concludes that Defendant Sodexo's policy did not breach any duty of care it may have owed Plaintiff (or the public in general). Defendant Sodexo's policy is also reasonable because it is consistent with the clearly articulated policy of the state of Georgia "to encourage citizens to report an individual they suspect may have committed crimes." *Achor Ctr., Inc. v. Holmes*, 465 S.E.2d 451, 454 (Ga. Ct. App. 1995) (citing *K-Mart Corp. v. Coker*, 410 S.E.2d 425, 428 (Ga. 1991)).

Finally, the Court finds that Plaintiff's claim is deficient on the causation element because the ultimate decision to arrest Plaintiff remained at all times with the arresting officers (and potentially MGSU administrators). In other words, the arresting officers were intervening actors not laboring under the mandate of Defendant Sodexo's policies.

The Court recognizes that under Georgia law, a party can be liable if the "intervening act was such that it could reasonably have been anticipated or foreseen by

the original wrongdoer." 404 S.E.2d 463, 465 (Ga. Ct. App. 1991). But Defendant Sodexo was within its rights to implement a policy that encouraged its employees to actively report threats under the assumption that the responding officers would conduct the ensuing investigation in accordance with the relevant standard for policing activity. *See Kroger Co., Inc. v. Briggs*, 746 S.E.2d 879, 886 (Ga. Ct. App. 2013) (Boggs, J., concurring specially) ("[I]t is [] reasonable to conclude that upon their arrival, the police will do their job and conduct an independent investigation to determine whether probable cause exists for arresting a person. Certainly, [defendant] was within its right to expect that law enforcement will not arrest someone falsely."). To hold otherwise would subject anyone—including those acting in good faith—to liability under a negligence theory for reporting any suspicious activity where that report resulted in an allegedly wrongful arrest. This, of course, would completely undermine the established rule that one cannot be liable for "merely relaying facts to an officer." *Welton*, 375 S.E.2d 108, 111.

The Court is aware of authority where the lack of an independent investigation by the arresting officer prior to the arrest subjected the reporting party to liability for the ensuing detainment on a negligence theory. *See, e.g., Corp. Prop. Inv'rs v. Milon*, 549 S.E.2d 157, 160-61 (Ga. Ct. App. 2001); *Briggs*, 746 S.E.2d 879 (Ga. Ct. App. 2013). In *Milon*, a mall security guard thought she observed the plaintiff shoplifting and, without conducting a further investigation, called police who arrested the plaintiff in reliance on the security guard's report. 549 S.E.2d at 159-60. The court held that the security guard and her

employers could be liable on a negligence theory for the plaintiff's arrest because the arresting officer did not conduct his own investigation, but instead, chose to rely exclusively on the security guard's report. *Id.* 161-62. The court emphasized, though, that the security guard embellished parts of her report to the arresting officer, while Plaintiff in this case does not allege that Defendant Sodexo's policy required Defendant Rumph to embellish her report of a threat to the authorities. Moreover, the defendants in *Milon* would have known that, by virtue of the security guard's job functions and training, responding officers would likely rely heavily on her report of events in making arrests, thus heightening her causal connection to the subsequent arrest. By comparison, it was not foreseeable that the Officers in this case would have detained an individual based on nothing more than a report from a cafeteria worker.

The Court also finds that *Kroger Co. Inc. v. Briggs* is distinguishable.[4] 746 S.E.2d 879 (Ga. Ct. App. 2013). In *Briggs*, a store manager suspected that the plaintiff was trying to pay with a counterfeit bill. *Id.* at 880. The manager called the police, who handcuffed the plaintiff before questioning him about the bill. *Id.* The defendants argued that they could not be liable under a negligence theory because the "officer's decision to arrest [the plaintiff] was the intervening proximate cause of the damages alleged by [the plaintiff]." *Id.* at 882. The court rejected this argument because the plaintiff was handcuffed before

---

[4] The Court also notes that, because Judge Boggs concurred specially in this decision "without a statement of agreement with all that is said in the majority opinion," the case is physical precedent only. *See* Ga. Ct. App. R. 33.2(a)(1).

he was questioned by the arresting officer. *Id.* at 883. Although this case is similar to *Briggs* in that regard, the Court believes this similarity is not dispositive when the court's reasoning in *Briggs* is considered on the whole. For starters, the court noted that the officer's decision to arrest the plaintiff was based on the defendant's "exhortations." *Id.* The court did not elaborate on the content of these exhortations but, as noted above, Plaintiff does not allege that Defendant Sodexo's policy required Defendant Rumph to "exhort" the authorities to arrest anyone who referenced bombs. She simply reported what Plaintiff said to the officers and they took over from there.

Additionally, and perhaps most significantly, the court in *Briggs* emphasized that its decision was based on the manager's failure to follow his employer's policy for reporting counterfeit bills, which only required him to contact the police if a significant number of potentially counterfeit bills were offered. *Id.* at 881. Eschewing this policy, the manager contacted the police when the plaintiff presented only a single suspicious bill. *Id.* at 883. The *Briggs* court found that the manager's failure to follow corporate policy was evidence of "misconduct" that could form the basis of his employer's liability. *Id.* In so holding, the *Briggs* court explicitly distinguished that case from *Baggett v. National Bank & Trust Co.*, 330 S.E.2d 108 (Ga. Ct. App. 1985). *Id.*

In *Baggett*, a bank teller alerted police of a potential threat after the plaintiff handed the teller a deposit slip that had "[t]his is a stek [sic] up" written on the back. 330 S.E.2d at 109. The police arrested the plaintiff based on the teller's report but released him

several hours later when it became apparent that he had not written the note on the back of the slip and that he was unaware of the note when he handed the slip to the teller. *Id.* The plaintiff then filed an action against the bank alleging that its negligence resulted in his false arrest. *Id.* The court found that the bank was entitled to summary judgment because, although "the owner of a business has a duty to protect its customers from injury caused by the tortious misconduct of its employees, the undisputed evidence refutes the existence of such misconduct in this case." *Id.* at 110 (internal citations omitted). The court concluded that "[a]lthough it may perhaps be said with the benefit of hindsight that the teller overreacted to the 'stek up' note, it is quite clear that in doing so she was merely acting in good faith to a perceived threat of criminal activity." *Id.*

Plaintiff attempts to circumvent this deficiency by arguing that "it is plausible that a reasonable jury could find that Defendant Sodexo's policy was a 'motivating cause' or 'driving force' behind [Plaintiff's] unlawful imprisonment." [Doc. 33, at 7]. But Plaintiff does not make such an allegation in his Amended Complaint [Doc. 23]. Indeed, nothing in the Amended Complaint suggests the arresting Officers were motivated by or even aware of Defendant Sodexo's policy. Moreover, Plaintiff does not explain how a policy to report bomb threats could somehow be a motivating force in a decision to make an arrest—even if the Officers had known of the policy. Accordingly, the Court finds that Plaintiff has not sufficiently alleged a causal connection between the allegedly negligent policy and his arrest.

### C. Statute of Limitations

Finally, regardless of how the Court construes Plaintiff's negligence claim, it is properly dismissed because Plaintiff failed to comply with Georgia's statute of limitations for bringing such a claim. Under Georgia law, the general statute of limitations for negligence claims is two years from the date the cause of action accrues. Ga. Code Ann. § 9-3-33. A cause of action for negligence accrues "at the time damage caused by a tortious act occurs, at which time the tort is complete." *Everhart v. Rich's, Inc.*, 194 S.E.2d 425, 428 (Ga. 1972).

Defendant Sodexo maintains that the cause of action accrued on the date of the incident—February 1, 2016. [Doc. 27-1, at 8]. Plaintiff, on the other hand, argues that the cause of action accrued the following day when the police released him from custody. [Doc. 33, at 7-8]. The difference in accrual dates is significant because Plaintiff did not file this action until February 2, 2018—one day late if the cause of action accrued on February 1, 2016, or on the final day to file if the cause of accrued on February 2, 2016. [Doc. 1-1, at 2]. The Court agrees with Defendant Sodexo that Plaintiff's claim is untimely.

In this case, the injury allegedly caused by Defendant Sodexo's negligence occurred on February 1, 2016, when the Officers first arrested Plaintiff. Putting aside the question of the merits of his allegations, Plaintiff could have brought this claim from the very moment that he was first handcuffed. Further damage may have occurred as Plaintiff's detention continued, but this fact would go to the extent of the harm rather

than the existence of a harm—the standard for accrual of a cause of action under Georgia law. *See id.* Plaintiff argues that the cause of action did not accrue until the later date because that is when he was released from police custody. [Doc. 33, at 7-8]. Although Plaintiff is correct that his false imprisonment claim accrued at the time he was released, his release date is irrelevant for purposes of his negligence claim. As the court noted in *Milon*, a defendant is liable if their negligence results in a plaintiff's false arrest or imprisonment, "but the action is then governed by the rules and principles of the tort of negligence." 549 S.E.2d at 163 (quoting *Stewart v. Williams*, 255 S.E.2d 699 (Ga. 1979)). Accordingly, Plaintiff may not import the standard for the accrual of a false imprisonment claim to determine when his negligence cause of action accrued. Plaintiff cites no Georgia case law that would authorize such a deviation from the standard for accrual in a negligence case and the Court is not aware of such authority.

Additionally, it is irrelevant that some of Plaintiff's claims were timely because the timeliness of each of Plaintiff's claims must be assessed on an individual basis. *See Daniel v. Ga. R.R. Bank & Tr. Co.*, 334 S.E.2d 659, 661 (Ga. Ct. App. 1985) ("Various causes of action in tort arising from the same set of facts may commence running at different times depending on the nature of the several causes of action involved, and the fact that the statute has run as to one does not necessarily mean that the statute has run as to all."). Thus, the fact that Plaintiff's false arrest claim is timely does not salvage Plaintiff's untimely negligence claim.

## CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** the State Defendants' Motion to Dismiss the State Law Claims [Doc. 26]. The Court dismisses Plaintiff's state-law claims against the State Defendants but denies their request to stay proceedings. [Doc. 26]. The Court also **GRANTS** the Sodexo Defendants' Motion to Dismiss. [Doc. 27]. In light of this order, Plaintiff's only remaining claims are those asserted against the State Defendants under 42 U.S.C. § 1983. However, the State Defendants are arguably entitled to qualified immunity—a threshold question the Court should resolve before allowing the proceedings to continue. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). Accordingly, the Court **ORDERS** Plaintiff to brief the Court on the limited issue of whether the State Defendants are entitled to qualified immunity. Plaintiff must submit this brief within 21 days of the date of this order. The State Defendants may submit a responsive brief to which Plaintiff may submit a reply. All submissions must comply with the local rules for briefs submitted to the Court and are subject to any deadlines contained in those rules.

**IT IS SO ORDERED** this 19th day of November, 2018.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**